

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
08/22/2014

| | | |
|---|---|---|
| IN RE: | § | |
| EDWARD I. NWOKEDI | § | CASE NO: 12-32759 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## <u>MEMORANDUM OPINION</u>

Margaret McClureis is awarded $24,000 on her Second Final Chapter 11 Fee Application. (Case No. 12-32759, ECF No. 181).

### Background

McClure provided legal representation for the debtor, Edward Nwokedi, from April 5, 2012 through August 16, 2013. Mr. Nwokedi filed his voluntary chapter 11 petition on April 11, 2012. (ECF No. 1). On April 18, 2012, Unlimited Restoration Specialist, Inc. ("URI") filed a motion to appoint a chapter 11 trustee. (ECF No. 10). On May 22, 2012, the Court ordered the appointment of a chapter 11 trustee. (ECF No. 46). On May 29, 2012, the Court approved the appointment of Lowell T. Cage as the chapter 11 trustee. (ECF No. 49). On July 24, 2012, the Court entered an Order approving McClure's Final Application for Compensation and Expenses for her legal work during the April 5, 2012 - May 22, 2012 time period. (ECF No. 90).

After the appointment of a trustee, McClure continued to represent Mr. Nwokedi on several matters related to his bankruptcy case. On July 13, 2012, the Court entered an Order authorizing Mr. Nwokedi to retain and employ McClure to represent him in connection with the bankruptcy, but the order only authorized employment through May 22, 2012. (ECF No. 67).

Although the Order terminated McClure as an estate representative effective May 23, 2012, the Order did not preclude Mr. Nwokedi from continuing to use McClure's services. The

issue was not addressed in the Order.  With the Trustee's consent, Mr. Nwokedi continued to use McClure as his lawyer.

On August 1, 2013, McClure's representation of Mr. Nwokedi was terminated.  On August 13, 2013, Joshua Wolfshol appeared as counsel for Mr. Nwokedi.  On March 31, 2014, the Court entered an Order confirming Nwokedi's Second Amended Joint Chapter 11 Plan. (ECF No. 176).  The plan was jointly filed for the Nwokedi case and a related case, 1002 Gemini Interests LLC.  The plan provides for a 100% distribution to the unsecured creditors in the Nwokedi and Gemini cases. (ECF No. 164 at 34).

At the confirmation hearing, the parties discussed whether McClure should be allowed to recover her legal fees from the estate for work performed after the appointment of a chapter 11 Trustee.  By agreement of all parties, the Court authorized McClure to request fees from the Plan Agent.  Accordingly, paragraph 41 of the Order confirming the chapter 11 plan states:

> Notwithstanding anything to the contrary in the Plan, Margaret Maxwell McClure's ("McClure") fees and expenses incurred in her representation of Nwokedi after the Trustee's appointment shall be paid by the Plan Agent, to the extent allowed by Court order, as a Professional Fee Claim. The foregoing does not prejudice any party's right, including Nwokedi, the Plan Agent and URSI, to object to the amount of McClure's requested fees and expenses and all such rights are fully preserved.

(ECF No. 176 at 6).

Accordingly, although authorization for payment of McClure's fees is not contained in § 330 of the Bankruptcy Code (she was no longer an Estate officer), the authorization became part of the confirmed plan.

On April 22, 2014, McClure filed a Second Final Chapter 11 Fee Application seeking a total of $35,884.70 for the period of May 29, 2013 through August 16, 2013.

On May 12, 2014, United Restoration Specialist, Inc. ("URI") filed an Objection to McClure's Second Final Application for Compensation and Expenses, arguing that "allowing Debtor's former counsel to recover compensation and expenses after the appointment of a Chapter 11 Trustee is not permitted under the plain language of Section 330 of the Bankruptcy Code, the USSC's holding in *Lamie*, the Fifth Circuit's holding in *Pro-Snax* and *Pro-Sn*ax's progeny." (ECF No. 190 at 2).

On May 15, 2014, URI filed an Amended Objection to McClure's Application and withdrew the above argument in light of paragraph 41 of the Court's Order Confirming the Second Amended Plan. (ECF No. 196).   On May 13, 2014, Mr. Nwokedi filed a notice announcing that the debtor and the plan agent did not object to McClure's Application because she agreed to reduce the total amount requested to $24,000.00. (ECF No. 192)   On June 9, 2014, the Court held a hearing on McClure's Second Final Chapter 11 Fee Application.  At the hearing, McClure confirmed that she has agreed to reduce her fees from $35,884.70 to $24,000.00.

### Legal Fees

The Fifth Circuit has held that in determining the compensation of professionals employed by the estate, the lodestar method, *Johnson* factors and 11 U.S.C. § 330, coalesce to form the framework for arriving at the proper fee amount. *CRG Partners Group, L.L.C. v. Neary (In re Pilgrims Pride Corp.),* 690 F.3d 650, 656 (5th Cir. 2012) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).   Although § 330 does not contain the *authorization* for the fees, the Court's confirmation order effectively imports § 330 factors into consideration of the amount of McClure's fees.

**i) Lodestar Method**

The lodestar amount is found by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. *Id.* at 655. A bankruptcy court has the discretion to adjust the lodestar amount upwards or downwards in light of its analysis of the *Johnson* factors. *Id.*

**ii) *Johnson* factors**

The twelve *Johnson* factors that courts must consider in determining reasonableness of fees are: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Id.*

**iii) 11 U.S.C. § 330**

Section 330(a)(3) of the Bankruptcy Code provides a non-exclusive list of factors that bear on a court's determination of the reasonable compensation for actual, necessary services and expenses rendered by attorneys and other court-supervised bankruptcy professionals. *See* 11 U.S.C. § 330(a)(1)(A). "[T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3).

## Analysis

McClure, the debtor, and the plan agent have agreed on a reduction of McClure's fees from $35,884.70 to $24,000.00.   URI is the only party objecting to McClure's request for $24,000.00 in fees.

After listening to the testimony at the June 9, 2014 hearing, the Court stated that it needed to review the application to determine which portion of McClure's fees relate to the $11,884.70 reduction.  The Court finds that this reduction sufficiently accounts for the portion of McClure's fees that are unrecoverable.  Accordingly, the Court approves McClure's Second Final Chapter 11 Fee Application in the amount of $24,000.00.

URI argues that there are two specific categories of fees that McClure cannot recover because they do not provide benefit to the estate: (i) McClure is not entitled to fees incurred in connection with defending her prior request for fees; and (ii) she is not entitled to any fees in August 2013 because her relationship with Nwokedi was terminated.  URI also generally objects to McClure's entire application by arguing that she "did not provide an identifiable, tangible, material benefit to the bankruptcy estate," as required under *Pro-Snax*. (ECF No. 196).

The Court finds that the following reductions are appropriate: (i) $321.00 in fees incurred after her representation of Mr. Nwokedi terminated on August 1, 2013; and (ii) a 25% reduction to the $35,563.70 lodestar amount to reflect the limited benefits that McClure's services

provided to the bankruptcy estate.  After accounting for these reductions, McClure's fees total $26,672.78.  Accordingly, the Court will approve the $24,000.00 amount agreed to by McClure, the debtor, and the plan agent.

**Fees for Defense of Fees Under *In re Asarco***

In *In re Asarco*, the Fifth Circuit held that "[s]ection 330(a) does not authorize compensation for the costs counsel or professionals bear to defend their fee applications." *In re ASARCO, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014).  In light of *In re Asarco*, any fees related to defending McClure's fee applications will be disallowed.  However, § 330(a)(6) expressly allows for the recovery of fees related to preparing the fee application: "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." § 330(a)(6).  Accordingly, only fees related to *defending* McClure's fee application will be disallowed.

URI contends that the fees incurred on June 27, July 24, and August 29 of 2012 are costs related to defending her fee applications.  (ECF No. 196 at 6).  After reviewing McClure's Detailed Time and Expense Record, the Court finds that none of the disputed fees relate to defending her fee application.  Accordingly, these fees are allowed.

McClure's records show that on June 27, 2012, she incurred $600 for "Hearing and e-mails with client re budget." (ECF No. 181 at 11).  The docket sheet indicates that on June 27, 2012, McClure appeared for Mr. Nwokedi on a matter unrelated to her fee application: the Trustee's "Emergency Motion to Pay Living and Business Expenses." (ECF No. 57).

For July 24, 2012, McClure's records show that she incurred $710.00 in fees for "Finalize and file Fee Application; Prepare and file Notice of Hearing on Fee Application; Review and revise Fee Application; Review Notice of Hearing on Final Fee Application; Mail

out Notice of Hearing and Final Fee Application." *Id*.  These fees are allowed because they relate to preparing and filing McClure's fee application.

For August 29, 2012, McClure's records show that she incurred $478.50 in fees for "Fee Application hearing and e-mails and telephone conferences re same; Review and print Fee Application; Review and print Order Granting Fee Application." *Id*. at 13.  Because McClure's initial fee application was uncontested, these fees do not relate to the *defense* of her fee application.

Accordingly, McClure's fee application does not include any unrecoverable fees relating to the defense of a fee application.

**August 2013 Fees**

URI contends that McClure is not entitled to the fees she incurred during August of 2013 because her representation of Mr. Nwokedi terminated on August 1, 2013.  (ECF No. 196 at 6). At the hearing, McClure confirmed that she ended her representation of Mr. Nwokedi after a conference call held on August 1, 2013.  In light of this admission, the Court cannot see why McClure should be entitled to collect fees that were incurred after this date.  Accordingly, the $321.00 in fees incurred between August 2, 2013 and August 16, 2013 are disallowed.

After taking the $321.00 reduction into account, McClure's fees total $35,563.70.

**Reduction to the Lodestar Amount**

Section 330 provides that a bankruptcy court, in its discretion, determines "the amount of reasonable compensation" for professionals retained under section 327 of the Bankruptcy Code. 11 U.S.C. § 330.  Bankruptcy courts have "considerable discretion" when determining whether an upward or downward adjustment of the lodestar is warranted.  *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012).

The Court finds that the rates charged by McClure are commensurate with the prevailing hourly rate in the community for similar work.[1]  After making the reduction discussed above, the lodestar amount totals $35,563.70. The only remaining issue is whether the Court should reduce the lodestar amount.

McClure's representation of Mr. Nwokedi can be broken down into two benefits to the bankruptcy estate: (i) work that contributed to the avoidance of conversion to chapter 7; and (ii) the filing of monthly operating reports (MORs) and monthly financial reports (MFRs).  At the hearing, McClure provided extensive testimony about how each line item recorded in June and July of 2012 fall into one of these categories.  The Court fully credits this testimony.

McClure's records indicate that a substantial amount of her time was spent in furtherance of these two benefits.  McClure prepared and filed MFRs and MORs, conducted conferences and drafted e-mails discussing chapter 11 requirements, and filed motions to pay living expenses and applications to retain professionals.  In the end, the confirmed joint chapter 11 plan provides for a 100% payout to all of the unsecured creditors and professionals.

Despite this result, the Court determines that a 25% reduction of the lodestar amount is necessary.  Specifically, the "results obtained" *Johnson* factor warrants a reduction in this case. McClure admitted that portions of her legal work did not produce any benefit to the estate.

After listening to the testimony and reviewing McClure's records, it's apparent that certain portions of her legal services did not produce "an identifiable, tangible, and material benefit to the estate."

For example, the fees incurred relating to McClure's unsuccessful attempts to object to the 1002 Gemini examiner's proof of claim provided no benefit to the estate.  McClure testified

---

[1] Applicant's hourly rate for the time period covered was $300.00 per hour for the attorney time and $95.00 per hour for paralegal time.

about her failed attempt to retain a special accountant in the bankruptcy case.  She claimed that the bankruptcy case hinged on employing Mr. Nwokedi's personal accountant in order to object to the 1002 Gemini examiner's proof of claim.  This accountant's employment was crucial because he allegedly possessed valuable accounting records for 1002 Gemini.  She explained that the accountant was unwilling to turn over these valuable records unless he was employed by the bankruptcy estate.  Despite the alleged importance of obtaining these records, McClure failed to either (i) file a motion to compel the turnover of the documents or (ii) file an application to employ the accountant.  Because McClure failed to obtain these documents, she was unable to file an objection to the examiner's proof of claim.  McClure admitted that the fees she incurred in her attempt to employ the accountant did not produce any benefit to the estate.

McClure's unsuccessful attempt to confirm a plan is another example of work that failed to provide any benefit to the estate.  McClure recorded approximately 10 hours of work for a total of $2,218 in fees on a plan and disclosure statement in December 2012 and March 2013.  However, McClure never conferred with any creditors about the details of the plan or circulated a draft.

Nevertheless, it is uncontroverted that—*without McClure's work*—the creditors would not have received the 100% distribution under the confirmed plan.  McClure successfully prevented the conversion of the Gemini case to a case under chapter 7.  This enabled the case to continue, and allowed for the eventual confirmation of the plan of reorganization.  Although the plan would not have been proposed or confirmed without the work done by Joshua Wolfshohl, he would not have had the opportunity to assist but for McClure's prior work.

Based on the significant amount in fees related to McClure's unsuccessful attempts to confirm a plan and object to the examiner's proof of claim, the Court finds that a 25% reduction

is warranted. A more significant reduction is unwarranted because of her preservation of the chapter 11 case. After accounting for the adjustment, McClure's fees total $26,672.78.

The proposed $11,884.70 reduction sufficiently accounts for the portion of McClure's fees that are unrecoverable.   The Court approves McClure's Second Final Chapter 11 Fee Application in the amount of $24,000.00.

### Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **August 22, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE